IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANDREW D. THOMAS, et al.,           }
                                    }
      Plaintiffs,                   }
                                    }   CIVIL ACTION NO.
v.                                  }
                                    }   99-AR-3280-S
PEMCO AEROPLEX, INC.,               }
                                    }
      Defendant.                    }

**ENTERED**
**MAR 31 2004**

### MEMORANDUM OPINION

Before the court is the motion of attorney Kenneth Simon ("Simon") asking this court to order the law firm of Bender & Agboola to pay expenses incurred in prosecuting the above-entitled action with funds from court-awarded expenses and attorneys fees. Doc. 267. Simon and Bender & Agboola appeared before the court by their respective counsel on March 3, 2004 to argue the motion. At the hearing, the court raised the issue of its jurisdiction. The parties orally argued the issue of jurisdiction, and subsequently filed briefs on the issue.

### Facts

The dispute between the parties arises out of a case that has been closed since October 16, 2002. Simon entered into an agreement with Darryl Bender and Adedapo Agboola, the members of the law firm of Bender & Agboola, to jointly represent the plaintiffs in the underlying litigation. The case was a hostile

1

work environment case brought by thirty-one plaintiffs, nine of whom settled prior to the trial. A jury awarded no money to the remaining twenty-two plaintiffs. In its October 16, 2002 order closing the case, the court awarded the settling plaintiffs $225,000 in reasonable attorneys fees and expenses. Doc. 264. The order provided that the "appropriate division of the aggregate amount of attorneys fees among the [plaintiffs'] attorneys will be the plaintiffs' problem. [Defendant's] check in payment shall be made jointly to Kenneth Simon and Adedapo Agboola." Doc. 263 at 3-4.

A dispute has arisen between the attorneys concerning the proper disbursement of the awarded fees and expenses. Simon wants the court to require Bender & Agboola either to pay outstanding expert witness fees and court reporter fees, or, alternatively, to turn the money over to Simon so that he can pay the fees. Simon attempts to invoke this court's jurisdiction saying that the court "has inherent authority derived from the Constitution to enforce [its] judgments." Doc. 275 at 5.

### Analysis

Whether this court has jurisdiction is dependent upon the court's application of 28 U.S.C. § 1367 to the instant case. Section 1367(a) provides in pertinent part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have

2

supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

The issue is whether the claim Simon now asserts "is so related to claims in the action within such original jurisdiction that [it forms] part of the same case or controversy under Article III of the United States Constitution."

The Eleventh Circuit has not addressed this particular jurisdictional question. The Second, Fourth, and Seventh Circuits have addressed similar issues, and have come to different conclusions. The Second Circuit addressed the jurisdictional question in *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841 (2d Cir. 1977). In *Grimes*, the underlying personal injury suit settled. *Id.* at 842-43. The plaintiffs' attorney of record and the plaintiffs' trial counsel disagreed as to the amount of the settlement monies each was entitled to. *Id.* The attorney of record moved for the district court to deposit the settlement funds in the court's registry, and to supervise the distribution of the funds. *Id.* at 843. The district court held a hearing on the issue, and later issued an order distributing the funds according to what it thought was proper. *Id.* The trial counsel appealed the decision to the Second Circuit arguing that the district court did not have jurisdiction over the disbursement dispute. *Id.* The

3

attorney argued that the dispute was simply a contract dispute between two attorneys from New York, so there was no basis for federal question or diversity jurisdiction. *Id*. The Second Circuit noted that the dispute was not just a controversy between the attorneys. It necessarily involved the plaintiffs in the underlying action because "any disbursement would diminish their share of the settlement." *Id*. at 843 n.3. The *Grimes* court then explained that "a district court acquires jurisdiction of a case or controversy as an entirety, and may, as an incident to the disposition of a matter properly before it, possess jurisdiction to decide other matters raised by the case of which it could not take cognizance were they independently presented." *Id*. at 844 (quoting Charles A. Wright, *Federal Courts* § 9 at 19 (1970)). The court relied on *Fulton Nat'l Bank of Atlanta v. Hozier,* 267 U.S. 276, 45 S.Ct. 261 (1925), which held that the exercise of ancillary jurisdiction is appropriate where the subsidiary controversy "has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Id.* at 280, 45 S.Ct. at 262. The Second Circuit held that, based on these standards, "the District Court's distribution of the Grimes settlement funds and its determination of appropriate disbursements was clearly ancillary to its approval of the settlement in the case." *Grimes,* 565 F.2d at 844.

The Seventh Circuit considered a similar situation in *Baer v.*

4

*First Options of Chicago Incorp.*, 72 F.3d 1294 (7th Cir. 1995). In *Baer*, the plaintiff's attorneys, James Antoniono ("Antoniono") and Paul Strauss ("Strauss"), disputed the ownership of attorneys fees awarded in the underlying Title VII case. *Id.* at 1296. During the course of settlement negotiations, a dispute arose between Antoniono and Strauss concerning the fees. *Id.* The attorneys noted the dispute in the proposed settlement they submitted to the court. *Id.* The district court, in its approval of the settlement, ordered that the portion of the fees that were contested, *viz.*, $50,000, be deposited with the clerk of the court pending a resolution of the dispute between the plaintiff's attorneys. *Id.* The district court then awarded the fees to Antoniono. *Id.* at 1297. Strauss appealed the decision to the Seventh Circuit. The *Baer* court raised the jurisdictional question *sua sponte*. After noting that 28 U.S.C. § 1367(a) governed the resolution of the dispute, the Seventh Circuit held that "this dispute was part of the same 'case or controversy' as the underlying litigation. The district court, therefore, had supplemental jurisdiction to hear this dispute." *Id.* at 1301. In coming to this decision, the *Baer* court reasoned,

> [T]he district court exercised affirmative control over the disputed fee. The settlement agreement, which was brought to the district court for its approval and for an order dismissing the case, specifically acknowledged the dispute and included a provision for resolving it. The court had jurisdiction to approve the parties' independently negotiated settlement, and that

5

> jurisdiction of necessity encompassed the terms of the settlement agreement. We thus conclude that the court did not overreach its authority to resolve the dispute concerning the fees. Moreover, the underlying litigation was a Title VII case, and Title VII vests in the district court broad authority to award attorney's fees to the prevailing party. 42 U.S.C. § 2000e-5(k).

*Id.* at 1301.

The Fourth Circuit considered the issue in *Taylor v. Kelsey*, 666 F.2d 53 (4th Cir. 1981). In *Taylor*, Sidney Kelsey ("Kelsey"), a Virginia attorney, represented a group of plaintiffs who were damaged by the release of pesticides into a river in Virginia. *Id.* at 54. Kelsey and the plaintiffs agreed to a contingency fee arrangement. *Id.* After Kelsey instituted the action, he brought in Edward Taylor ("Taylor"), another Virginia attorney, because of Taylor's expertise in such pesticide litigation. *Id.* Taylor and Kelsey agreed that Taylor would receive one-third of the contingency fee if the case settled and one-half if the case went to trial. *Id.* Two months after Taylor was brought into the case, the defendant proposed a settlement. *Id.* Kelsey decided he no longer needed Taylor's services and informed him that their association was terminated. *Id.* Taylor filed a motion to intervene seeking compensation under the attorneys' agreement. *Id.* The district court found that the fee dispute was outside of its ancillary jurisdiction, because (1) the dispute bore no relationship to the underlying litigation; (2) the dispute had no effect on the litigants or the outcome of their case; (3) the court

6

did not have control of the funds in controversy; and (4) "neither judicial economy nor fairness militated in favor of federal jurisdiction." *Id*. The Fourth Circuit affirmed, holding that:

> The fee dispute did not arise as a matter of necessity from anything which occurred in the proceedings of the [underlying] litigation, nor did the district court have control over the fee in the sense that the court was required to establish and distribute a fee. Instead, the controversy arose purely from a private contract dispute between two Virginia residents. Under these circumstances, we see no basis for ancillary jurisdiction.

*Id*.

This court is persuaded by the reasoning of the district court and Fourth Circuit in *Taylor*.[1] First, this dispute bears no relationship to the underlying litigation. It is a contract dispute between attorneys. Second, the instant dispute has no effect on the litigants or the outcome of their case. The nine settling plaintiffs have already received their funds from the defendant. The only issue before this court is how the attorneys fees, which have also already been paid by defendant, should be divided among plaintiffs' attorneys. Third, the court does not have control of the funds in controversy. While the instant case is similar to *Baer* in that it deals with attorneys fees awarded in

---

[1] The fact that § 1367 was enacted after *Taylor* was decided does not alter this court's reasoning. Section 1367 codified the doctrine of ancillary jurisdiction, which was the basis of the *Taylor* court's decision. *See Baer*, 72 F.3d at 1298.

a Title VII case where the court has broad authority over the award of the fees, the case is distinguishable from both *Baer* and *Grimes*, and similar to *Taylor*, because the funds at issue were never deposited with the court, and the court expressly disclaimed any responsibility for their distribution. In *Baer* and *Grimes,* the dispute over the funds was brought to the court's attention prior to a court order disbursing the funds. In *Grimes,* one of the attorneys moved for the district court to deposit the settlement funds in the court's registry, and to supervise the distribution of the funds. In *Baer,* the proposed settlement agreement acknowledged the attorneys fee dispute. The court held the funds until the fees issue was resolved. In contrast, this court has already ordered a disbursement of the funds and closed the case. The court's October 16, 2002 memorandum opinion discussing the award of attorneys fees and expenses states that any conflict between plaintiffs' attorneys regarding the distribution of the awarded fee and expenses should be resolved by the plaintiffs and not by the court. The court said that the "*appropriate division of the aggregate amount of attorneys fees among the five attorneys will be the plaintiffs' problem.*" Doc. 263 at 3-4.

Neither judicial economy nor fairness militates in favor of exercising jurisdiction over this entirely collateral controversy that is or can be decided by another court of competent jurisdiction. This court has no unique knowledge of the contract

8

between Simon and Bender & Agboola regarding division of expenses. An Alabama state court is better-positioned to apply Alabama contract law to the dispute.

Simon argues that the court has "inherent authority" to fashion orders that are necessary to effectuate its order awarding fees and expenses. This court's October 16, 2002 order simply required defendant in the underlying case to pay $225,000 to Simon and Bender & Ogboola. The court carefully and with reason refrained from making a statement as to the division of the funds between Simon and Bender & Ogboola. Based on the circumstances of this case, the court holds that it does not have supplemental jurisdiction over the fee and expense dispute, because the dispute does not form part of the same "case or controversy" as the underlying litigation.

## Conclusion

By separate order, the court will deny Simon's motion without prejudice for lack of jurisdiction.

DONE this  31st  day of March, 2004.

/s/ William Acker

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE